THE STATE, STEPHEN PELL, PROSECUTOR, PLAINTIFF IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, DEFENDANTS IN ERROR.

1. The constitutional provision, in Art. IV., § 7, ¶ 11, that prohibits special legislation regulating "the internal affairs of towns and counties," embraces cities.

2. A law altering the boundaries of the wards of the city of Newark, and displacing from office certain of the officials, and changing the times of their election, is a special and local law regulating the internal affairs of a city, and therefore within the prohibitory clause above referred to.

On error to the Supreme Court.    For opinion of the Supreme Court, see *ante* p. 71.

For the plaintiff in error, *J. D. Bedle* and *J. Vanatta.*

For the defendants in error, *Henry Young* and *F. T. Frelinghuysen.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The single question presented for the consideration of this court in this case is, whether the legislative act approved on the 15th of February, 1878, and which is entitled "A further supplement to an act entitled 'An act to revise and amend the charter of the city of Newark,'" approved March 11th, 1857, is constitutional. The

general purpose and effect of the statute thus impugned, is to alter the boundaries of eleven of the fifteen wards of this city, and also the times of holding the municipal elections.

The twenty-third section of the act contains the following injunction : " That within fifteen days after the passage of this act, the mayor and common council of said city shall proceed to divide the wards of said city, as hereby constituted, into election districts, and to appoint the necessary inspectors and judges of elections, and clerks of elections, required by law for each of the election districts so set off, who shall serve until their successors are elected." The city officials having refused to perform the duty thus imposed, an application was made to the Supreme Court for a writ of *mandamus* to enforce obedience to the statutory injunction ; that application having been refused, we are now called upon, in this writ of error, to review that judgment.

It was denied, in the Supreme Court, that the act in question had any binding force whatever, on the ground that it was enacted in violation of the prohibitions of Art. IV., § 7, ¶ 11, of our state constitution, which provides that it shall not be within the competency of the legislature to pass private, local, or special laws in certain enumerated cases. Among these restrictions is the following, viz. : " That the legislature shall not pass private, local, or special laws regulating the internal affairs of towns and counties, appointing local officers or commissioners to regulate municipal affairs." It was this prohibition that the Supreme Court held to be destructive of the act in question.

In reviewing that decision, it is manifest that there are two subjects for consideration—first, whether this law now challenged is, in point of fact, a regulation of the internal affairs of the city of Newark ; and, second, whether this clause of the constitution just cited, is applicable to such city.

Touching the first of these questions, I am unable to perceive the slightest ground for a rational doubt. It seems to me that, to any one who looks at this matter with judicial impartiality, the proposition is self-evident that this law does

attempt to regulate, in many important particulars, the internal affairs of the city of Newark. This law, by its own force, turns out of office, before the conclusion of their term, the city officers who had been duly chosen by the people, and repeals the act under which they had been elected. It then directs a new election, changing the time of holding elections from the month of October to the month of March. I cannot think that any one will affirm that municipal elections are not the affairs of the city. This was not the position taken in the learned, interesting, and instructive arguments with which the court was favored by the experienced counsel of these relators. In that discussion, it was seemingly assumed that the provisions of this law were severable, so that, in one of its aspects, it was admissible to regard it as a law possessed of the single efficacy of changing the boundaries of the wards. But this course is not possible, as this law is a unit, not capable of such distribution, its scheme of elections and the territorial alterations of its ward lines being indissolubly connected. Nor can it be contended, with any show of reason, that this election plan is a mere adjunct and necessary consequence of the modifications in the boundaries of the wards. Such is clearly not the case, as there was no necessity for any interference with any existing tenure of office. The law must be regarded as a whole, and, so regarded, I consider it indisputably clear that it is a regulation of the internal affairs of the city of Newark.

Nor do I think it would be proper, in such a connection as this, to seek the occasion for deciding abstract questions of constitutional law. It appears to me to be dangerous in the extreme, to attempt to expound any new constitutional regulation upon *a priori* reasonings, for the law is so practical a science, that its rules are always best understood when they have been exemplified in experience. I think it easy to say, with confidence, that the legislature cannot, if this constitutional prohibition applies to cities, alter the boundaries of the wards, in connection with this scheme displacing the present incumbents, and providing, in a novel method, for the election

of substitutes; and yet I might find it very difficult to affirm that, under no posture of things, could the boundaries of the wards of a city be changed by special and local legislation. Until the particular conditions of the case are present, it does not seem to me to be discreet to express any opinion on this latter question.

As I have said, I find no difficulty in concluding that this law, considered as a whole, is in direct conflict with the constitutional provision under review, provided such provision be applicable to the city of Newark.

This conclusion leads to the second point of inquiry, which is, whether the constitutional restriction in question is operative in the *cities* of the state. The language of the clause is prohibitive of the enactment of "private, local, or special laws regulating the internal affairs of *towns* and counties." The question is as to the meaning of the word "towns," in this connection. When this subject was before the Supreme Court, in the case of *Van Riper* v. *Parsons, ante p.* 1, it was considered that this term "towns," in its largest signification, embraced cities, and that, in view of the obvious purpose indicated by the provision, it was to be construed in that large sense. The maximum of mischief occasioned by these special laws, had been exhibited in the cities of the state, and the minimum in the towns, using the term in its restricted meaning, and therefore, to apply the remedy so as to embrace solely this minor class of evils, seemed to the court, as a matter of legal construction, a mere *reductio ad absurdum*. It is not necessary to repeat the course of reasoning that led the Supreme Court to this conclusion, as it appears in the case as reported. The same subject was pressed upon the attention of this court, and I have, therefore, again carefully considered the grounds of my former conclusion. But my further reflections and researches have not altered my first convictions. I still think this word "towns" cannot, rationally, in this text, be taken in its ordinary and narrow sense. It seems to me entirely clear that the purpose for which this

clause was designed, is not to be doubted or misunderstood, and that it is equally clear, that to take the term in its narrow meaning, is to defeat, almost entirely, such purpose. The provision is remedial, and the remedy is to be made, if practicable, commensurate with the evil at which it is aimed. It appears to me that constitutional provisions are to be construed with much liberality in the light of their reason and purpose, the object being to arrive, from their language as applied to the subject to which it relates, at the intention of the people in establishing them. Mr. Justice Story has this just stricture upon the unwisdom of adhering too closely to the letter, in the interpretation of these important instruments. He says: " It does not follow, either logically or grammatically, that because a word is found in one connection, in the constitution, in a definite sense, therefore the same sense is to be adopted in every connection in which it occurs. This would be to suppose that the framers weighed only the force of single words, as philologists or critics, and not whole clauses and objects, as statesmen and practical reasoners." I think it, then, altogether safe to declare that, when a term has two meanings— the one a narrow and usual one, and the other a broader, though more unusual one, and the acceptance of the former meaning will, in part, impair the purpose clearly manifested in the clause in which such term occurs, and the acceptance of such latter meaning will fully effectuate such purpose—it is in this last sense that such term is to be interpreted. This was the principle of construction adopted in the Supreme Court in the case referred to, and I think it is the correct one, and is applicable in the present instance.

Nor can I think that the learned counsel of the relators were as happy in their struggle with this branch of the case as they were with the other topics of argument; for I cannot but think that the premises assumed by them was a fatal concession against their view of this subject. Apparently perceiving the absurdity of limiting the meaning of the term " towns " to the designation of the few localities to which in

its narrow sense it is applicable, it was contended that the term, in a wide sense, embraced townships, as it was admitted that it did cities. Now I agree with these premises, that this word in this wide sense takes in both townships and cities, but I think that it is a palpable *non sequitur* to deduce from such *data* the conclusion that thereby the clause becomes applicable to townships and not to cities. Counsel insisted, with much force, that townships were within the mischiefs to be remedied, and certainly there will be no denial that cities are; then if both places are within the meaning of the terms used and both within the mischiefs, why are not both subject to the remedial protection of the clause? In my opinion, such is in reality the result, the term "towns" in the passage standing as a generic designation, embracing townships as well as cities, and all other places corporate established for local government of the same grade as these, and also those of an inferior order, if any such there be.

Finding this fatal infirmity in this original act, it would be altogether superfluous to inquire into the validity of any of those subsequent statutes which it was said operated to repeal the law above considered.

I think the judgment of the Supreme Court should, on the ground just stated, be affirmed.

THE CHANCELLOR. I agree with the other members of the court in the opinion that although the act of the legislature which is brought under consideration by the proceedings in this cause suggests the important questions which have been discussed in the Supreme Court and in this, and which were adjudicated upon in the court below, yet that these questions are not so presented under the act as to make it obligatory upon this court to adjudicate upon them in disposing of the writ of error. I therefore concur in the conclusion at which they have arrived, but deem it proper to add that inasmuch as the result is reached without reference to those questions or the opinion of the Supreme Court thereon, concur-

rence in the result is neither an expression nor an indication of opinion upon those questions or any of them.

*For affirmance*—The Chancellor, Chief Justice, Depue, Knapp, Scudder, Woodhull, Clement, Dodd, Green, Lilly, Wales.    11.

*For reversal*—None.